McGirr v Zurbrick (2023 NY Slip Op 03568)

McGirr v Zurbrick

2023 NY Slip Op 03568

Decided on June 30, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 30, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CURRAN, BANNISTER, AND OGDEN, JJ.

87 CA 22-00485

[*1]JASON J. MCGIRR, PLAINTIFF-APPELLANT,
v
JUSTIN ZURBRICK, DEFENDANT, AND CANALSIDE HARBOR 2013, LLC, DEFENDANT-RESPONDENT. (APPEAL NO. 2.) 

LAW OFFICES OF STEVE BOYD, P.C., BUFFALO (LEAH A. COSTANZO OF COUNSEL), FOR PLAINTIFF-APPELLANT.
RUPP BAASE PFALZGRAF CUNNINGHAM LLC, BUFFALO (NOLAN M. HALE OF COUNSEL), FOR DEFENDANT-RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Erie County (Daniel Furlong, J.), entered February 2, 2022. The judgment dismissed the second amended complaint against defendant Canalside Harbor 2013, LLC. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed without costs.
Memorandum: Plaintiff commenced this action seeking damages for injuries he sustained when the vehicle he was in was rear-ended by a vehicle driven by defendant Justin Zurbrick, who had worked as a bartender that evening at a restaurant owned and operated by Canalside Harbor 2013, LLC (defendant). As relevant here, plaintiff asserted causes of action against defendant based on claims of violation of the Dram Shop Act and negligent supervision. Defendant moved for summary judgment dismissing the second amended complaint against it, and Supreme Court granted the motion except with respect to the claim for violation of the Dram Shop Act.
Prior to trial, plaintiff served a notice for discovery and inspection and requested, inter alia, a copy of payroll records to enable plaintiff to identify employees who were working the evening of the incident. After having requested the information on two occasions, plaintiff moved pursuant to CPLR 3126 for sanctions based on defendant's failure to comply and requested an adverse inference charge. In response to the motion, defendant produced Zurbrick's timecard. In reply, plaintiff asserted that defendant's failure to comply was willful and sought to have the court sanction defendant by striking its answer to the second amended complaint (answer) or by rendering a liability determination in plaintiff's favor. The court granted the motion to the extent of sanctioning defendant $1,000 and directed defendant to search for and produce timecards and payroll records for all employees working on the night of the incident. The court further ordered that if additional records were found that had not already been produced, defendant may be subject to additional sanctions upon a motion by plaintiff. The court denied plaintiff's motion insofar as it sought an adverse inference charge, the striking of defendant's answer, or a determination of liability. Defendant subsequently produced the timecards of additional employees who worked the evening of the incident, and plaintiff cross-moved for leave to renew and reargue his motion for sanctions. The court, inter alia, denied plaintiff's cross-motion and the case proceeded to a jury trial.
In appeal No. 1, plaintiff appeals from that order insofar as it denied his cross-motion for leave to renew and reargue. In appeal No. 2, plaintiff appeals from a judgment dismissing the second amended complaint against defendant upon a jury verdict in favor of defendant.
Initially, we agree with defendant that the appeal from the order in appeal No. 1 insofar as it denied that part of plaintiff's cross-motion seeking leave to reargue must be dismissed because no appeal lies therefrom (see MidFirst Bank v Storto, 121 AD3d 1575, 1575 [4th Dept 2014]; Empire Ins. Co. v Food City, 167 AD2d 983, 984 [4th Dept 1990]). Contrary to defendant's contentions, however, the cross-motion also sought leave to renew and was supported by new, relevant facts, i.e., the timecards for the employees who worked at the restaurant the evening of the incident (see generally CPLR 2221 [d] [1]; [e] [1]). Nevertheless, we further conclude that the appeal from the order insofar as it denied that part of plaintiff's cross-motion seeking leave to renew must be dismissed because the right to appeal from that intermediate order terminated upon the entry of the judgment in appeal No. 2 (see Kim v II Yeon Kwon, 144 AD3d 754, 755 [2d Dept 2016]; Brown Bark II, L.P. v Weiss & Mahoney, Inc., 90 AD3d 963, 964 [2d Dept 2011]; see generally Matter of Aho, 39 NY2d 241, 248 [1976]). Contrary to defendant's contention, however, the issue raised by plaintiff with respect to the order in appeal No. 1 may be considered upon the appeal from the judgment in appeal No. 2 (see Aho, 39 NY2d at 248; Simon v Granite Bldg. 2, LLC, 170 AD3d 1227, 1229 [2d Dept 2019], lv denied 34 NY3d 904 [2019]; see also CPLR 5501 [a] [1]). That part of the order in appeal No. 1 denying that part of plaintiff's cross-motion for leave to renew "necessarily affect[ed]" the final judgment (CPLR 5501 [a] [1]) inasmuch as reversing that part of the order and granting plaintiff's motion for sanctions insofar as it sought the striking of defendant's answer or a determination of liability in plaintiff's favor "would inescapably have led to a vacatur of the judgment" (Bonczar v American Multi-Cinema, Inc., 38 NY3d 1023, 1025 [2022], rearg denied 38 NY3d 1170 [2022] [internal quotation marks omitted]; see Aho, 39 NY2d at 248; Stanescu v Stanescu, 206 AD3d 1031, 1033-1034 [2d Dept 2022]).
With respect to plaintiff's contention that the court should have granted that part of the cross-motion seeking leave to renew and struck defendant's answer or rendered a liability determination in favor of plaintiff based on defendant's discovery violation, we reject defendant's assertion that plaintiff was not aggrieved by the court's August 2021 order on plaintiff's initial motion for sanctions and that he was thus precluded from cross-moving for leave to renew that motion. Plaintiff's motion initially sought an adverse inference charge for the missing timecards. When defendant produced Zurbrick's timecard in response to the motion—after previously representing that the timecard was missing or had been destroyed—plaintiff sought to have the court sanction defendant for the discovery violation by striking defendant's answer or rendering a liability determination in plaintiff's favor. Contrary to defendant's assertion, it was proper for plaintiff to raise that new request for sanctions in his reply papers inasmuch as the request was made in direct response to defendant's production of Zurbrick's timecard, for which an adverse inference charge would no longer be appropriate (see Studer v Newpointe Estates Condominium, 152 AD3d 555, 557 [2d Dept 2017]; see generally Mikulski v Battaglia, 112 AD3d 1355, 1356 [4th Dept 2013]). In the August 2021 order, the court sanctioned defendant $1,000 but otherwise denied the motion. We conclude that plaintiff was aggrieved by the August 2021 order because the court denied his request to strike defendant's answer or make a liability determination in plaintiff's favor (see Lobello v New York Cent. Mut. Fire Ins. Co., 152 AD3d 1206, 1207 [4th Dept 2017]; Finocchi v Live Nation Inc., 141 AD3d 1092, 1093 [4th Dept 2016]).
Regarding the merits of plaintiff's challenge to the denial of that part of his cross-motion for leave to renew, a motion seeking leave to renew "shall be based upon new facts not offered on the prior motion that would change the prior determination" and "shall contain reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221 [e] [2], [3]; see Ashley M. v Marcinkowski, 207 AD3d 1093, 1094 [4th Dept 2022]; Home Insulation & Supply, Inc. v Iskalo 5000 Main, LLC, 189 AD3d 2118, 2119 [4th Dept 2020]). We agree with plaintiff that his cross-motion was based on new facts not offered on the prior motion, i.e., the timecards for the employees other than Zurbrick who were working on the night of the incident, which defendant did not turn over until after the court's August 2021 order. We further agree that plaintiff had a reasonable justification for his failure to present those facts on the prior motion. We conclude, however, that the court properly denied plaintiff's cross-motion insofar as it sought leave to renew because the new facts would not change the court's prior determination (see Shaw v Friedly, 167 AD3d 1490, 1490 [4th Dept 2018]; Violet Realty, Inc. v Gerster Sales & Serv., Inc. [appeal No. 2], 128 AD3d 1348, 1350 [4th Dept 2015]). In his cross-motion, plaintiff did not seek additional monetary sanctions but rather requested that the court strike defendant's answer or, in the alternative, reinstate the causes of action previously dismissed on defendant's [*2]summary judgment motion and issue a determination of liability in plaintiff's favor. " 'Although the nature and degree of a sanction for a party's failure to comply with discovery generally is a matter reserved to the sound discretion of the trial court, the drastic remedy of striking [a pleading] is inappropriate absent a showing that the failure to comply is willful, contumacious, or in bad faith' " (Windnagle v Tarnacki, 184 AD3d 1178, 1179 [4th Dept 2020]; see Pezzino v Wedgewood Health Care Ctr., LLC, 175 AD3d 840, 841 [4th Dept 2019]; Mosey v County of Erie, 148 AD3d 1572, 1574 [4th Dept 2017]). Plaintiff's alternative request for relief seeks, in essence, a default judgment, which is an equally inappropriate sanction for a discovery violation absent the requisite showing of willfulness, contumaciousness, or bad faith (see O'Connor v Root, 284 AD2d 979, 979 [4th Dept 2001]; Monaco v Camie-Campbell, Inc., 256 AD2d 1214, 1215 [4th Dept 1998], lv dismissed in part & denied in part 93 NY2d 887 [1999]). Here, while the court recognized that defendant had no excuse for the discovery violation, it did not abuse its discretion in determining that the striking of defendant's answer or awarding plaintiff a default judgment was not appropriate (see Lobello, 152 AD3d at 1207; O'Connor, 284 AD2d at 979; see also Finocchi, 141 AD3d at 1093).
With respect to the judgment, which dismissed plaintiff's second amended complaint against defendant upon the jury verdict in favor of defendant, plaintiff first contends that the court erred in its response to a note from the jury regarding the jury instructions. On plaintiff's claim for violation of the Dram Shop Act, the court instructed the jury pursuant to Pattern Jury Instruction (PJI) 2:28. It first recited the relevant provisions of General Obligations Law
§ 11-101 by instructing the jury that "[a]ny person who shall be injured in person, property, means of support, or otherwise by any intoxicated person or by reason of the intoxication of any person, whether resulting in his death or not, shall have a right of action against any person who shall, by unlawful selling liquor to such intoxicated person, have caused or contributed to such an intoxication. And in this such action, such person shall have the right to recover damages." Continuing pursuant to PJI 2:28, the court instructed the jury that "unlawful selling occurs when a person sells, delivers, gives away, or causes, permits or procures the sale, delivery, or gift, of any alcoholic beverage to any visibly intoxicated person." The first question on the verdict sheet asked "Did [defendant] sell alcohol to . . . Zurbrick prior to the motor vehicle accident on October 26, 2017?" The jury retired to deliberate and shortly thereafter sent a note asking "[F]or question 1, can sell, also encompass give to . . . Zu[r]brick?" Over plaintiff's objection, the court instructed the jury "[t]he answer is no, there has to be proof of a sale . . . Give does not qualify."
Initially, we reject plaintiff's contention that the court was required to re-read PJI 2:28 to the jury in response to the note because that instruction was "law of the case." The cases relied on by plaintiff to support that assertion do not involve the propriety of the court's response to a note from the jury during deliberations. Plaintiff further contends that the court erred in its response to the note because a claim for violation of the Dram Shop Act against a business involved in the commercial sale of alcohol does not require that there be an actual sale of alcohol and may encompass the business giving alcohol away, including "drinks on the house." We reject that contention. The plain language of General Obligations Law § 11-101 prohibits the unlawful "sale" and "selling" of alcohol (see D'Amico v Christie, 71 NY2d 76, 84 [1987]). This is in contrast to General Obligations Law § 11-100 (1), which prohibits the unlawful "furnishing" of alcohol to a person under the age of twenty-one years and does not require a commercial sale (see Sherman v Robinson, 80 NY2d 483, 486-487 [1992]; McCauley v Carmel Lanes, 178 AD2d 835, 836 [3d Dept 1991]; see generally Stewart v Taylor, 167 AD2d 846, 846 [4th Dept 1990], lv denied 77 NY2d 805 [1991]). The Dram Shop Act created an exception to the common-law rule that a person is not liable for selling or furnishing alcohol to an adult who becomes intoxicated and, "[a]s an exception to the common law, the statute must . . . be construed narrowly" (D'Amico, 71 NY2d at 83; see Delamater v Kimmerle, 104 AD2d 242, 244 [3d Dept 1984]). Had the legislature intended that a sale of alcohol is not required under section 11-101 for a business involved in the commercial sale of alcohol, it could have so stated (see generally D'Amico, 71 NY2d at 84).
Plaintiff's reliance on Alcoholic Beverage Control Law § 65 in support of his assertion that the unlawful sale of alcohol includes giving it away is misplaced. That statute provides that "[n]o person shall sell, deliver or give away or cause or permit or procure to be sold, delivered or given away any alcoholic beverages to 1. Any person, actually or apparently, under the age of twenty-one years; [or] 2. Any visibly intoxicated person." Although General Obligations Law § 11-101 and Alcoholic Beverage Control Law § 65 must be read together (see Mitchell v The [*3]Shoals, Inc., 26 AD2d 78, 79 [1st Dept 1966], affd 19 NY2d 338 [1967]; Matalavage v Sadler, 77 AD2d 39, 42-43 [2d Dept 1980]), it is not in the way that plaintiff seeks. Alcoholic Beverage Control Law § 65 does not create an independent statutory cause of action (see Sherman, 80 NY2d at 487; Moyer v Lo Jim Café, 19 AD2d 523, 523 [1st Dept 1963], affd 14 NY2d 792 [1964]; Parslow v Leake, 117 AD3d 55, 69 [4th Dept 2014]). "Liability under [General Obligations Law] sections 11-100 and 11-101 attaches only in the event of an 'unlawful' sale or delivery of alcohol. That term is defined in Alcoholic Beverage Control Law § 65" (Sherman, 80 NY2d at 487 [emphasis added]). In other words, Alcoholic Beverage Control Law
§ 65 defines what makes a sale of alcohol to another "unlawful" under General Obligations Law § 11-101, which is the selling of alcohol to a visibly intoxicated person (see generally Jones v Kelly, 201 AD2d 536, 536 [2d Dept 1994]). Alcoholic Beverage Control Law § 65 does not define what an unlawful "sale" is under General Obligations Law
§ 11-101.
We therefore conclude that, for liability to be imposed under General Obligations Law § 11-101, plaintiff was required to establish that there was an unlawful sale of alcohol and that it was not merely given away (see Stevens v Spec, Inc., 224 AD2d 811, 813 [3d Dept 1996]; Carr v Kaifler, 195 AD2d 584, 585 [2d Dept 1993]; Custen v Salty Dog, 170 AD2d 572, 572 [2d Dept 1991]). The court thus properly instructed the jury in response to its note.
Plaintiff next contends that the court erred in denying his request for an adverse inference charge for an alleged missing bar receipt. A party seeking an adverse inference charge based on an opposing party's failure to produce a document "must make a prima facie showing that the document in question actually exists, that it is under the opponent's control, and that there is no reasonable explanation for failing to produce it" (Hutchinson v New York City Health & Hosps. Corp., 172 AD3d 1035, 1036-1037 [2d Dept 2019]; see Jae Duk Ahn v Kyong Koo Kang, 192 AD3d 994, 995 [2d Dept 2021]; State of New York v 158th St. & Riverside Dr. Hous. Co., Inc., 100 AD3d 1293, 1295-1296 [3d Dept 2012], lv denied 20 NY3d 858 [2013]). The court properly denied plaintiff's request inasmuch as he failed to make a prima facie showing that the receipt in question actually existed (see Jae Duk Ahn, 192 AD3d at 995). Contrary to plaintiff's further contention, we conclude that the court properly precluded him from introducing Zurbrick's statement to the police that he had consumed alcohol at the restaurant as direct evidence against defendant, a coparty to the litigation (see Morrissey v City of New York, 221 AD2d 607, 607 [2d Dept 1995]; Ellis v Allstate Ins. Co., 97 AD2d 970, 970 [4th Dept 1983]; see also Rivera v New York City Tr. Auth., 54 AD3d 545, 547 [1st Dept 2008]; see generally Jerome Prince, Richardson on Evidence § 8-226 [Farrell 11th ed 1995]).
Finally, we reject plaintiff's contention that the court erred in granting defendant's motion insofar as it sought summary judgment dismissing the claim for negligent supervision against it. As we noted above, "[a]t common law, one who provided intoxicating liquor was not liable for injuries caused by the drinker, who was held solely responsible" (D'Amico, 71 NY2d at 83; see Allen v County of Westchester, 109 AD2d 475, 476 [2d Dept 1985], appeal dismissed 66 NY2d 915 [1985]). "Excessive alcohol consumption was deemed to be the proximate cause of injuries produced by the inebriate; selling or furnishing alcohol to an adult who elected to become intoxicated was not viewed as the root of the resulting harm" (D'Amico, 71 NY2d at 83; see Portaro v Gerber, 217 AD2d 539, 541 [2d Dept 1995]; Allen, 109 AD2d at 476-477). "By the Dram Shop Act, the Legislature created an exception to the common-law rule" (D'Amico, 71 NY2d at 83). Another exception exists "where the intoxicated individual, while inside a bar, injures a third party and the individual who served the alcohol had the opportunity to exercise control over the wrongdoer's conduct and was reasonably aware of the necessity of such control" (Portaro, 217 AD2d at 541; see Struebel v Fladd, 75 AD3d 1164, 1165 [4th Dept 2010]; Allen, 109 AD2d at 477; Wright v Sunset Recreation, 91 AD2d 701, 701 [3d Dept 1982]).
Here, we conclude that defendant met its initial burden on the motion with respect to the negligent supervision claim by establishing that the incident that caused plaintiff's injuries did not occur inside the bar (see Place v Cooper, 35 AD3d 1260, 1261 [4th Dept 2006]; Lombart v Chambery, 19 AD3d 1110, 1110-1111 [4th Dept 2005]; Wright, 91 AD2d at 701). Plaintiff failed to raise a triable issue of fact in opposition (see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Entered: June 30, 2023
Ann Dillon Flynn
Clerk of the Court